IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL P. RANDOLPH,

    **Plaintiff,**

    v.                                    CASE NO. 23-3019-JWL

FINNEY COUNTY JAIL,
et al.,

    **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se case under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. At the time of filing, Plaintiff was detained at the Finney County Jail in Garden City, Kansas ("FCJ").[1] On January 26, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 4) ("MOSC"), granting Plaintiff an opportunity to show good cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC. Plaintiff filed an Amended Complaint (Doc. 6). On March 17, 2023, the Court entered a Memorandum and Order (Doc. 8) dismissing Plaintiff's claims against the FCJ, and directing FCJ officials to prepare a *Martinez* Report on Plaintiff's claims regarding the denial of treatment for his alleged condition resembling blackouts/seizures. The *Martinez* Report (Doc. 11) (the "Report") has now been filed. The Court's Memorandum and Order provided that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 8, at 4.) The Court's screening standards are set forth in the MOSC.

---

[1] Plaintiff notified the Court of his new address in light of his release on February 17, 2023. (Doc. 6–2, at 4.)

## I. Nature of the Matter before the Court

Plaintiff alleges in his Amended Complaint that Nurse Romel failed to "identify/treat/seek assistance from appropriate medical providers" for a condition Plaintiff was having that "resemble[ed] blackouts/seizures." (Doc. 6, at 2.) Plaintiff claims that Lt. Lawson failed to rectify the situation after Plaintiff's repeated complaints. *Id*.

Plaintiff alleges that he was involved in an accident that was "precipitated by the untreated condition," resulting in the loss of the end of his right little finger on December 27, 2022, at the FCJ. *Id*. Plaintiff acknowledges that he received emergency medical treatment for his finger, but alleges that he has not been treated for the condition resembling blackouts/seizures. *Id*. at 2–3. Plaintiff alleges that after "submitting two documented accounts of [his] condition," he was still denied treatment for the blackouts/seizures. *Id*. at 3. Plaintiff claims that he requested treatment for the blackouts/seizures "for months" from September 2022 to December 2022. *Id*.

Plaintiff names the FCJ, Lt. Kyle Lawson, and Nurse (fnu) Romel as defendants. The Court dismissed Plaintiff's claims against the FCJ. Plaintiff states that although he originally sought $150,402 for "medical cost of treatment, pain & suffering & mental distress," he would be willing to go to mediation to ensure an appropriate settlement is reached. *Id*. at 5.

The Report provides as follows:

> 1. In his Amended Complaint, plaintiff claims he requested treatment for "blackouts/seizures" from September of 2022 to December of 2022. Doc. 6, p. 3.
> 2. However, in a letter he wrote to this Court's clerk, Randolph said that he only began experiencing "what felt like seizures or blackouts in early Oct." Doc. 6–2, p. 2 of 4.
> 3. Plaintiff claims in his Amended Complaint that he exhausted the grievance procedure on the issue of the blackouts or seizures before filing this lawsuit. Doc. 6, p.3.
> 4. However, the two grievances he attached to his Amended

Complaint say nothing about either blackouts or seizures. See Doc. 6–1.

5. Likewise, none of the grievances or other communications received by the jail prior to December 27, 2022, mentioned anything about seizures. See Exhibit A, attached Inmate Communication Forms.

6. Plaintiff claims that on December 27, 2022, he got up to close his door, "experienced one of the blackouts/seizures, at which time the little finger of my right hand was caught in the door." Doc. 6–2, p. 3.

7. Plaintiff underwent a medical screening process upon his incarceration and said nothing about blackouts or seizures. Exhibit B, attached Medical Records, p. 1–2.

8. Prior to December 27, Plaintiff received medical treatment for various conditions including depression, dental problems, and testicular issues, but his records do not reflect him raising issues regarding blackouts or seizures with any of his health care providers. *Id.* at p. 1–21 and 32– 43.

9. During the course of plaintiff's incarceration, from 9-24-22 to 2-18-23, the jail staff members completed routine inmate observation forms on plaintiff that never mentioned seizures or blackouts. Exhibit D, attached Inmate Observation Forms.[2]

10. In his Amended Complaint, plaintiff says that on December 27, he was involved in an accident precipitated by his blackouts or seizures. Doc. 6, p. 2.

11. Footage from the surveillance cameras at the jail illustrate that on the date in question, plaintiff closed the door on his finger while visibly conscious and thereafter moved around animatedly, again appearing quite conscious. See Exhibits E and F, relevant surveillance footage.

12. Plaintiff received treatment from EMTS after his accident, but body cam footage capturing some of this treatment and his communications with the EMTs does not record any mention of black-outs or seizures, nor the need for treatment, therefore. See Exhibits G and H.

13. Plaintiff was sent to the ER at St. Catherine Hospital, where he had the opportunity to discuss his medical issues with health care professionals, yet the notes sent back to the prison afterward make no mention of blackouts or seizures. See Exhibit B, p. 22–28.

14. Plaintiff submitted a grievance on 12/30/22, indicating that he had been having seizures and had one at the time of his accident on December 27. Exhibit A, p. 21–22.

15. Plaintiff communicated to a nurse on January 2, 2022, that he had seizures. Exhibit B, p. 45.

---

[2] The Court notes that the entry for January 4, 2023, states that Plaintiff "did not have any seizure signs." (Doc. 11–4, at 8.)

> 16. Plaintiff was placed on an ongoing special watch on December 31, 2022, with staff initially checking on him every 15 minutes. Exhibit C, p. 2.
> 17. Later, on January 2, 2023, these checks were decreased to once every half hour. *Id*. at p. 8.
> 18. No staff saw or recorded any symptoms of blackouts or seizures during the course of this Special Watch from 12/31/22 to 1/8/23. *Id*.

(Doc. 11, at 1–3.)

**II.  DISCUSSION**

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies).  To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted).  The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

Plaintiff must also satisfy the subjective prong.  The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).  An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v.*

4

*Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).  "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'"  *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id*. at 1139.  "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted).  Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*.  "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*.  (citations omitted).

Although Plaintiff acknowledges that he received medical care for his injured finger, he claims that he has never received medical care for his condition resembling blackouts/seizures.  However, Plaintiff's alleged condition has never been diagnosed by any doctor.  Although Plaintiff claims that he discussed his condition with the ER doctor after his accident, the discharge notes do not mention the need for any follow-up treatment for seizures.  *See Sparks v. Singh*, 690 F. App'x 598, 608 (10th Cir. 2017) (unpublished) (stating that "infirmary note's cursory reference to a questionable history of diabetes was not a confirmed diagnosis requiring treatment[,] [n]or did it manifest a clear directive for treatment such that a reasonable jury could

infer that Mr. Laurence was deliberately indifferent"); *see also Clark v. Colbert*, 895 F.3d 1258, 1269 (10th Cir. 2018) (finding that discharge instructions that directed plaintiff to follow up with the surgeon who previously operated on him "[did] not amount to a diagnosis of a particular condition or a prescription of specific care").

No staff at the FCJ have witnessed Plaintiff experiencing symptoms that resemble a seizure. The Court has also reviewed the video of the incident and nothing in the video suggests Plaintiff was experiencing a seizure when his finger was shut in his cell door. *See* Exhibit F to the Report (filed conventionally). Under these circumstances, it was not obvious that a doctor's attention was necessary for his alleged condition resembling blackouts/seizures. Plaintiff has not satisfied the objective prong of the Eighth Amendment test for deliberate indifference.

Plaintiff has also failed to show that any defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference. Plaintiff has not shown that either defendant refused to verify underlying facts that they strongly suspected to be true, or declined to confirm inferences of risk that they strongly suspected to exist. *See Luca*s, 58 F.4th at 1137. Here, staff attempted to verify Plaintiff's claims. They examined video footage of the accident and reviewed Plaintiff's ER discharge records. Even though the video and the records contradicted Plaintiff's claims, FCJ staff still placed Plaintiff on a special watch. Yet, he exhibited no signs of his alleged condition during the watch. Plaintiff should show good cause why his medical claim should not be dismissed for failure to state a claim.

### III. Response Required

Plaintiff is required to show good cause why his Amended Complaint should not be dismissed for the reasons stated herein. Failure to respond by the deadline may result in

dismissal of this case without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **June 6, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated May 10, 2023, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE**